IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

LISA G. WEIRICH,                          )
                                          )
                    Plaintiff,            )
                                          )
vs.                                       )    Case No. 15-cv-1164-JPG-CJP
                                          )
CAROLYN W. COLVIN,                        )
Acting Commissioner of Social Security,   )
                                          )
                    Defendant.            )

## MEMORANDUM and ORDER

**GILBERT, District Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Lisa G. Weirich, represented by counsel, seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Ms. Weirich applied for benefits in February 2012 alleging disability beginning on January 26, 2012.   After holding an evidentiary hearing, ALJ Sheila E. McDonald denied the application on March 28, 2014 (Tr. 18-30).   The Appeals Council denied review, and the decision of the ALJ became the final agency decision subject to judicial review (Tr. 1).

Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1.    The ALJ erred in evaluating plaintiff's mental residual functional capacity (RFC) in that she failed to account for plaintiff's limitations in maintaining concentration,

persistence or pace.

2.     The ALJ failed to consider the functional effects of plaintiff's persistent and severe headaches.

3.     The ALJ failed to meet her burden at step five of the sequential analysis because the jobs testified to by the vocational expert exceeded plaintiff's RFC, the testimony included obvious and unresolved conflicts with the *Dictionary of Occupational Titles*, and the testimony lacked both basis and reliability.

## **Applicable Legal Standards**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes.   In this context, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.   42 U.S.C. § 423(d)(3).   "Substantial gainful activity" is work activity that involves doing significant physical or mental activities and that is done for pay or profit.   20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled.   The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity.   The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling.   If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues.   The fourth step

> assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008); *accord Weatherbee v. Astrue*, 649 F.3d 565, 568-69 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984); *see also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by

substantial evidence and that no mistakes of law were made.   It is important to recognize that the scope of review is limited.   "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g).   Thus, this Court must determine not whether Ms. Weirich was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *See Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)).   This Court uses the Supreme Court's definition of substantial evidence, *i.e.*, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.   *Murphy v. Colvin,* 759 F.3d 811, 815 (7th Cir. 2014)*.*   However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.   *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ McDonald followed the five-step analytical framework described above.   She determined that Ms. Weirich had not been engaged in substantial gainful activity since the alleged date of disability, and that she was insured for DIB through March 31, 2017.

The ALJ found that plaintiff had severe impairments of degenerative disc disease, degenerative joint disease, chronic pain syndrome, and depression.   She further determined that these impairments do not meet or equal a listed impairment.

The ALJ found that Ms. Weirich had the residual functional capacity (RFC) to perform work at the light exertional level, limited to need for a sit/stand option; only occasional climbing of ramps and stairs; no climbing of ladders or scaffolds; no crouching, crawling, or kneeling; no work at unprotected heights or around dangerous machinery; no concentrated exposure to vibration; and only simple, routine tasks.

Based upon the testimony of a vocational expert, the ALJ found that plaintiff was not able to do her past relevant work, but she was not disabled because she was able to do jobs that exist in significant numbers in the regional and national economies.  Such jobs would include charge account clerk, assembler of optical goods, office helper, and mail clerk.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order, with the exception of the medical records at Tr. 608-655.  Those records were submitted in conjunction with plaintiff's request for review by the Appeals Council. *See* Tr. 5.  Because those medical records were not before the ALJ, they cannot be considered by this Court in determining whether the ALJ's decision was supported by substantial evidence. Records "submitted for the first time to the Appeals Council, though technically a part of the administrative record, cannot be used as a basis for a finding of reversible error."  *Luna v. Shalala*, 22 F3d 687, 689 (7th Cir. 1994); *see also Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008); *Rice v. Barnhart*, 384 F.3d 363, 366 n. 2 (7th Cir. 2004).

The following summary of the record is directed to the points raised by plaintiff and is confined to the relevant time period.

1.      **Agency Forms**

Plaintiff was born in 1963 and was almost 49 years old on the alleged date of disability, January 26, 2012.   A prior application for disability benefits had been denied in 1997 (Tr. 178).

Plaintiff had a high school education.   She had worked as an office manager in a computer store from 1999 to January 2012 (Tr. 182).

Plaintiff submitted several Function Reports and Disability Reports.  *See* Tr. 180-190, 212-217, 218-230, 233-239.   In August 2012, she said she had lack of energy and trouble focusing, and was easily distracted (Tr. 212, 215).   In August 2012, among other physical and mental problems, she noted headaches and migraines, and said she became emotionally upset when her pain became too intense and that her pain interfered with her concentration (Tr. 219). She said she was easily distracted and it took a long time to get things done.   Constant pain, dizziness and ringing in her ears interfered with her concentration (Tr. 230).

2.      **Evidentiary Hearing**

Ms. Weirich was represented by an attorney at the evidentiary hearing on February 12, 2014 (Tr. 38).

Plaintiff testified that she had worked as an office manager for a shop that sold and repaired computers.   It was a small business.   She paid the bills, answered the phone, did some filing, and functioned as the cashier.   She left that job because the store closed.   She then collected unemployment benefits (Tr. 48-51).

Ms. Weirich testified that she could not read a book or magazine because she could not concentrate (Tr. 60-61).   Her husband and twenty-three year old son did the household chores (Tr. 61).   She cooked two meals a day but had to have help putting food in the oven and opening cans.

She was a "basic cook" (Tr. 63).

Plaintiff had been in four automobile accidents, which caused her neck and back problems (Tr. 51-52).   She took Wellbutrin for depression.   She had crying spells three or four times a week (Tr. 55-56).

Headaches were not mentioned at the hearing.

A vocational expert (VE) also testified.   He testified that plaintiff's past work would be classified in the DOT as an administrative clerk, DOT number 219.367-010, specific vocational preparation[1] (SVP) of 4, and it was performed by her at the sedentary level (Tr. 65-66).

The ALJ asked the VE a hypothetical question that corresponded to the ultimate RFC findings.   The VE testified that this person could not do plaintiff's past work.   She could, however, do jobs that exist in significant numbers in the national and regional economies. Examples of such jobs are charge account clerk, assembler of optical goods, office helper, and mail clerk.   The first two jobs are sedentary, and the second two are light.   The VE testified that the second two jobs have an SVP of 2 (Tr. 66-67).

### 3.    Medical Records

#### (a) Headaches

Ms. Weirich saw Dr. Carlos Yu, a neurologist, in July 2012 for follow-up regarding a seizure disorder.   Her seizure disorder was controlled and she had not had a seizure since her last visit.   She denied headaches on the review of systems (Tr. 293-294).

Plaintiff saw an eye doctor for episodes of blurred vision in October 2012.   She denied

---

[1]  SVP is "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."   Department of Labor, Dictionary of Occupational Titles, App'x C § II, 1991 WL 688702 (rev. 4th ed. 1991).

headaches (Tr. 320).

In April 2013, plaintiff saw Dr. Buenger at Piasa Pain Center for bilateral knee injections. She told him that her daily persistent headaches were not treated because she had a seizure disorder.   She enquired about Topamax or "other prevention rather than rescue" (Tr. 366).   The doctor told her to consult with her neurologist about treatment for her headaches (Tr. 368).

In May 2013, on a review of systems with Dr. Buenger, plaintiff denied headaches (Tr. 642-643).

Plaintiff returned to Dr. Buenger for follow-up in September and October 2013.   The notes from these visits contain identical language indicating that plaintiff enquired about Topamax or "other prevention rather than rescue" (Tr. 373, 376).   The doctor again told her to consult with her neurologist about treatment for her headaches (Tr. 374, 378).

There is no indication that Ms. Weirich consulted with a neurologist regarding headaches thereafter.

**(b)    Mental Limitations**

In July 2012, Dr. Yu noted that plaintiff had a history of depression and was taking Wellbutrin.   The review of systems was positive for anxiety, mood swings and "psychiatric symptoms" (Tr. 293-294).

In June and September 2013, plaintiff reported to Dr. Buenger at Piasa Pain Center that she experienced anxiety, depression, mood swings, nervousness, and difficulty sleeping (Tr. 377, 386).   In June, no mental status exam was performed, but Dr. Buenger noted that she was alert and oriented and had good hygiene (Tr. 386).   In September, on mental status exam, she was oriented times three, mood and affect were normal, and her recent memory was intact (Tr. 378).

In July 2013, plaintiff asked her primary care physician, Dr. Mohyuddin, to adjust her depression medication.   He increased her dosage of Wellbutrin to 150 mg. three times a day (Tr. 343).

There was no consultative psychological exam.

There are no Psychiatric Review Technique or Mental RFC Assessment forms in the record.

## Analysis

At step two of the sequential analysis, ALJ McDonald concluded that plaintiff's depression was a severe impairment.   "A "severe" impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."   20 C.F.R. § 404.1520(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. § 404.1521(b).   That subsection goes on to give examples of basic work activities; the examples include mental activities such as understanding, carrying out and remembering simple instructions; use of judgment; responding appropriately to supervisors, co-workers and usual work situations; and dealing with changes in a routine work setting.

At step three, the ALJ determined that plaintiff had "moderate difficulties" in maintaining concentration, persistence or pace.   She also concluded that plaintiff had the ability to perform simple, routine tasks based on her ability to do the following activities:

- Prepare simple meals;

- Perform household chores;

- Watch television;

- Manage finances;

- Use a computer;

- Participate in Geocashing [sic];[2]

- Shop.

Tr. 22.

The ALJ cited to Exhibits 3E and 8E and to "testimony" for the above information. Exhibit 3E is a Function Report dated May 6, 2012.   In that report, plaintiff said that she prepared meals such as meat with a starch, frozen pizza or frozen fish.   She was able to do dishes, dust, and do laundry, but not towels or jeans.   She went shopping for groceries but was accompanied by a family member.   Her ability to "manage finances" consisted of her ability to pay bills, count change, and handle a checkbook.   She said she watched television and did Geocache, but she was lacking in concentration and patience (Tr. 191-200).   Exhibit 8E is a Function Report dated October 26, 2012.   In that report, plaintiff said that her pain interfered with her concentration. She said that her husband and son did much of the household chores.   She cooked dinner, but needed some help, and did dishes on the weekend, dusted and used a dust mop.   She did "light housekeeping," but it might take her all day.   Her family members did their own laundry.   She sometimes lost track of what checks had been written and which had cleared (Tr. 218-230).

Plaintiff argues that the ALJ failed to account for her moderate limitation in concentration, persistence or pace in that she failed to include that specific limitation in her hypothetical question to the VE or in her RFC assessment.   Rather, the ALJ limited her to simple, routine tasks.   Citing

---

[2] "Geocaching . . . is an outdoor recreational activity, in which participants use a Global Positioning System (GPS) receiver or mobile device and other navigational techniques to hide and seek containers, called 'geocaches' or 'caches', at specific locations marked by coordinates all over the world.   A typical cache is a small waterproof container containing a logbook (with a pen or pencil).   The geocacher enters the date they found it and signs it with their established code name.   After signing the log, the cache must be placed back exactly where the person found it." https://en.wikipedia.org/wiki/Geocaching, visited on December 13, 2016.

*O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010), plaintiff correctly argues that a limitation to simple, routine tasks does not adequately account for a moderate limitation in maintaining concentration, persistence or pace.

This case is somewhat unusual in that there was no consultative psychological evaluation, and no Psychiatric Review Technique or Mental RFC Assessment forms prepared by state agency consultants.   Thus, this is not a case where a state agency consultant "translated" findings as to plaintiff's limitations into a mental RFC assessment.   *See, e.g., Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002).

*O'Connor-Spinner* is directly applicable and requires remand.   Having determined that Ms. Weirich was moderately limited in her ability to maintain concentration, persistence or pace, the ALJ was required under *O'Connor-Spinner* to include that limitation in the hypothetical question posed to the VE.

In *O'Connor-Spinner*, the Seventh Circuit noted the well-established rule that the ALJ is required to orient the VE to the "totality of a claimant's limitations," including deficiencies of concentration, persistence and pace.   *O'Connor-Spinner*, 627 F.3d at 619.   Employing a limitation such as the one used here (simple, routine tasks) is not sufficient.   "In most cases, however, employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace."   *Id.* at 620.   The reason for this holding is that there is a distinction between "the ability to stick with a given task over a sustained period" and "the ability to learn how to do tasks of a given complexity."   *Id.*

The Seventh Circuit reaffirmed the holding of *O'Connor-Spinner* in *Yurt v. Colvin*, 758

F.3d 850, 858-59 (7th Cir. 2014)("But we have repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.").

The Commissioner argues that Seventh Circuit case law does not hold that an ALJ can *never* account for moderate limitation in concentration, persistence or pace by limiting a claimant to simple, routine tasks.   In support she cites *Johansen v. Barnhart*, 314 F.3d 283, 288-89 (7th Cir. 2002).   That citation is inapposite for two reasons.   First, in *Johansen*, a doctor "translated" plaintiff's mental limitations into a mental RFC assessment, and the ALJ relied on that doctor's opinion.   *Johansen*, 314 F.3d at 289.   Here, no doctor assessed plaintiff's mental RFC.   In addition, *Johansen* is distinguishable because the hypothetical question there passed muster because it limited plaintiff to "'repetitive, low-stress' work, a description that excluded positions likely to trigger symptoms of the panic disorder that lay at the root of the claimant's moderate limitations on concentration, persistence and pace."   *O'Connor-Spinner*, 627 F.3d at 619.

In short, Seventh Circuit case law establishes that a limitation to simple, routine tasks does not ordinarily suffice to capture a moderate limitation in maintaining concentration, persistence or pace.   Here, there was no medical opinion as to plaintiff's mental RFC.   The ALJ relied solely on her assessment of plaintiff's daily activities for her conclusion that she was able to perform simple, routine tasks.   However, her ability to perform tasks such as watching television, preparing simple meals, and writing checks does not mean that she has "the ability to stick with a given task over a sustained period."   *Id.* at 620.   The Commissioner also argues that no medical source placed any mental limitation at all on plaintiff.   That is a red herring.   First, no medical source

evaluated her mental RFC at all.  Secondly, the ALJ herself determined that plaintiff was moderately limited in her ability to sustain concentration, persistence or pace.  The fact that no medical source placed mental limitations on her is irrelevant.  The ALJ determined that plaintiff's depression was a severe impairment and that she had a moderate limitation in maintaining concentration, persistence or pace.  Having so found, the ALJ was required to account for that limitation in the hypothetical question posed to the VE and in her RFC assessment.  Under *O'Connor-Spinner* and *Yurt,* limiting her to simple, routine tasks was not sufficient.

The ALJ's error requires remand, so it is not necessary to discuss plaintiff's other points in detail.  The VE's testimony was imprecise, to say the least, but those imprecisions will hopefully not be repeated on remand.  The Court notes, however, where plaintiff fails to identify a conflict between the DOT and the VE's testimony at the hearing, she must later "argue that the conflicts were obvious enough that the ALJ should have picked up on them without any assistance, for SSR 00-4p requires only that the ALJ investigate and resolve *apparent* conflicts between the VE's evidence and the DOT."  *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (citing *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006)) [emphasis in original].  Further, in *Terry v. Astrue*, 580 F3d. 471 (7th Cir. 2009), the Seventh Circuit held that a claimant who was limited to simple, unskilled work was not necessarily unable to do jobs that require Reasoning Level 3.

With regard to plaintiff's headaches, it is sufficient to say that plaintiff points to no evidence that her headaches caused her any functional limitations.  It was plaintiff's burden to show that her alleged impairments affected her ability to work.  *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013); 20 C.F.R. § 404.1512(a) & (c).  In the absence of any evidence that headaches caused any functional limitations, any error in failing to discuss plaintiff's headaches

was harmless.   *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011).

Lastly, the Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that Ms. Weirich was disabled during the relevant period, or that she should be awarded benefits.   On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Lisa G. Weirich's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE:   December 16, 2016**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**